# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SEAN BURT, individually and on behalf of all others similarly situated, | ) ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-465-JJM-LDA |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF RHODE ISLAND; and DOES 1-10, inclusive, | ) ) ) ) | |
|     Defendants. | ) ) | |
| LOGAN THOMSON, individually and on behalf of all others similarly situated, | ) ) ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-295-JJM-LDA |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF RHODE ISLAND, | ) ) ) | |
|     Defendant. | ) ) | |
| HYUN CHOI, ANNA HOUSE, and AMY PHAM, individually and on behalf of all others similarly situated, | ) ) ) ) | |
|     Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-191-JJM-LDA |
| BROWN UNIVERSITY and THE CORPORATION OF BROWN UNIVERSITY, | ) ) ) ) | |
|     Defendants. | ) | |



```
                                      )
DESTINY    WASHINGTON,    DEVIN       )
HAZEL, and DORIS ALEXANDER, on        )
behalf of themselves and all others   )
similarly situated,                   )
      Plaintiffs,                     )
                                      )    C.A. No. 20-246-JJM-LDA
      v.                              )
                                      )
JOHNSON & WALES UNIVERSITY,           )
      Defendant.                      )
                                      )
                                      )
                                      )
JEREMY SIMMONS-TELEP,                 )
individually and on behalf of all     )
others similarly situated,            )
      Plaintiff,                      )
                                      )    C.A. No. 20-226-JJM-LDA
      v.                              )
                                      )
ROGER WILLIAMS UNIVERSITY,            )
      Defendant.                      )
                                      )
```

**MEMORANDUM and ORDER**

JOHN J. MCCONNELL, JR., Chief United States District Judge.

## I.    BACKGROUND

This order consolidates Motions to Dismiss in five lawsuits brought against four universities in Rhode Island – the University of Rhode Island ("URI"), Brown University ("Brown"), Johnson & Wales University ("JWU"), and Roger Williams University ("RWU").[1]  All the suits allege that Defendant universities' decisions to

---

[1] Fed.R.Civ.P. 42(a)(2) ("If actions before the court involve a common question of law or fact, the court may consolidate the actions.").

transition from in-person to remote academic experiences in response to the COVID-19 pandemic amounted to breaches of contract.   Suits against Brown and JWU also charge the schools with unlawful conversion, and the latter also brings a claim of "money had and received" against JWU.

*University of Rhode Island*

URI is a public research university with over 2,000 graduate and 14,000 undergraduate students.   ECF No. 1 at 3-4 (20-465).   The university traditionally offers both in-person and online learning options, at different price points.   However, the COVID-19 pandemic interrupted the latter option – in mid-March 2020, in-person classes were changed to online only, students were mostly required to vacate their dormitories, and on-campus services and activities were cancelled.   Students subsequently completed their Spring 2020 semesters remotely.   URI offered a 25% refund towards housing and meal plans, but otherwise declined to refund tuition and other fees.[2]   ECF No. 1 at 5-6 (20-465).

In response, two lawsuits have been filed against URI arguing that the decision amounted to a breach of contract and unjust enrichment.   One suit brings these claims on behalf of a single class of all individuals who paid tuition and/or fees for on-campus instruction at URI for the Spring 2020 semester, ECF No. 1 (20-465), whereas the other brings the claims on behalf of both a "tuition class" and a "fees class."   ECF No. 22 (20-295).

---

[2] Accordingly, neither of the URI lawsuits seeks to recover funds paid towards on-campus housing or meals.   ECF No. 1 at 5 n.8 (20-465); ECF No. 22 at 8 (20-295).

*Brown University*

Brown is a private research university with approximately 10,257 full-time students, including 7,043 undergraduates. ECF No. 22 at 10 (20-191). Prior to the COVID-19 pandemic, the school offered few online courses and programs. *Id.* at 13. However, on March 12, 2020, the university announced that it was shifting all academic instruction online and requiring most students living on-campus or in Brown-owned properties to vacate their residences. For the remainder of the Spring 2020 semester, university facilities were closed, in-person events were cancelled, and students completed their courses online. Brown offered limited refunds on recreation, housing, and meal plan payments, but otherwise declined to refund tuition and other fees.[3] *Id.* at 23-24.

Plaintiffs contend that this denial amounted to a breach of express and implied contracts, as well as unjust enrichment and conversion on the part of Brown.[4] They bring these claims on behalf of a single class, including all who paid Brown tuition, fees, and/or room and board. *Id.* at 6-7.

*Johnson & Wales University*

---

[3] Plaintiffs criticize Brown's method for calculating refunds for on-campus housing and meal plans, referring to it as "flawed." ECF No. 22 at 23-24 (20-191). Accordingly, their damages request includes room and board refunds. *Id.* at 26.

[4] Plaintiffs bring the claims against both Brown University and The Corporation of Brown University. Brown responds that the two are coterminous, rather than separate and distinct legal entities, and the university may sue and be sued by the name Brown University. ECF No. 26 at 1 n.1 (20-191). In light of this, the Court removes the Corporation from the suit, which will proceed against Brown University as the sole defendant. Fed.R.Civ.P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

4

JWU is a private university with 12,390 students – split between campuses in Providence, Rhode Island; Miami, Florida; Denver, Colorado; and Charlotte, North Carolina. ECF No. 16 at 2 (20-246). The university operates in-person academic programs, as well as an online program called JWUOnline, which offers online degrees at a lower price point. *Id.* at 2-3. On March 17, 2020, just over a week after the beginning of the Spring 2020 trimester, JWU announced that it would be conducting all classes online for the remainder of the term. *Id.* at 7. JWU required students living on-campus to move out, closing the school's residence halls and other facilities and cancelling in-person events and services for the trimester. The school declined to offer any pro-rated discounts or refunds on Spring 2020 tuition or fees, including room and board fees. *Id.* at 8.

Plaintiffs argue that this decision amounted to a breach of contract, as well as unjust enrichment, conversion, and "money had and received" by JWU. They bring these claims on behalf of a single class, comprised of all who paid tuition and/or fees for in-person programs at JWU during the Spring 2020 trimester.[5] *Id.* at 11.

*Roger Williams University*

RWU is an institution of higher learning located in Bristol, Rhode Island. The school has historically offered degree options both in-person and online (through its "University College" program) at different price points. ECF No. 21 at 4-5 (20-226). On March 11, 2020, the university instructed students not to return to campus

---

[5] Though the complaint defines a single class, it also refers to the potential for subclasses throughout. ECF No. 16 (20-246).

following their Spring Break and announced that it was moving all classes online, cancelling in-person events, and closing most non-essential campus facilities. *Id*. at 9. RWU has announced that it will be issuing *pro-rata* refunds or credits for room and board fees, but not for tuition or any other fees paid for the semester.[6] *Id*. at 9-11.

Plaintiff contends that RWU has breached its contracts with students and has been unjustly enriched by this decision. He brings his claims on behalf of both a "tuition class" and a "fees class." *Id*. at 11.

## II.   STANDARDS OF REVIEW

All four universities have moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the claims brought against them. To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must plead a "plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Each complaint must have sufficient factual allegations that plausibly state a claim upon which relief can be granted. This standard requires more than a recitation of elements and must allow the Court to draw a reasonable inference that a defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs. *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009).

---

[6] Plaintiff did not seek recovery of room and board fees but reserved the right to amend his allegations if RWU fails to issue the promised refunds. ECF No. 21 at 10-11 (20-226).

Additionally, pursuant to Fed. R. Civ. P. 12(b)(1), JWU moves to dismiss Plaintiff Doris Alexander's claims for lack of standing. The school argues that this Court lacks subject matter jurisdiction over her claims because she brings them on behalf of her adult daughter. "The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). If a plaintiff "lacks Article III standing to bring a matter before the court, the court lacks subject matter jurisdiction to decide the merits of the underlying case." *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

## III. DISCUSSION

The Court will now consider Defendants' Motions to Dismiss, combining legal analysis for the claims shared among multiple lawsuits (breach of contract, unjust enrichment, and conversion) and then addressing unique claims separately.

### A. Breach of Contract and Breach of Implied Contract Claims

Plaintiffs brought breach of contract claims against each of the four universities, alleging that their decisions to transition from in-person to online education breached their contracts with students.[7] Defendants all moved to dismiss, arguing that the complaints failed to sufficiently allege contractual promises for in-person education.[8] Further, they argue that Plaintiffs are effectively bringing

---

[7] ECF No. 1 at 9-10 (20-465); ECF No. 22 at 12-28, 31-33 (20-295); ECF No. 22 at 24-26 (20-191); ECF No. 16 at 14-25, (20-246); ECF No. 21 at 14-29, 31-34 (20-226).

[8] ECF No. 12-1 at 13-17 (20-465); ECF No. 24-1 at 13-21 (20-295); ECF No. 26 at 10-16 (20-191); ECF No. 17 at 19-22 (20-246); ECF No. 23 at 13-19 (20-226).

educational malpractice claims – impermissibly asking this Court to assess the quality of their educational offerings.  Citing the importance of academic discretion, they urge against court intervention.  *See, e.g., Ambrose v. New England Ass'n of Sch. & Colleges, Inc.*, 252 F.3d 488, 499 (1st Cir. 2001) (noting that "policy concerns include the lack of a satisfactory standard of care by which to evaluate educators' professional judgments and the patent undesirability of having courts attempt to assess the efficacy of the operations of academic institutions.").

Two of the five complaints – against URI and RWU – bring separate breach of contract claims on behalf of a "tuition class" and a "fees class," whereas the remaining complaints allege on behalf of a single combined class.  Because all the suits call for tuition and fees refunds with substantively similar arguments, the Court will combine its breach of contract analysis for all four universities, dividing between the two types of payments.  Overall, this Court partially GRANTS (tuition class) and partially DENIES (fees class) Defendants' Motions to Dismiss Plaintiffs' breach of contract claims – dismissing claims regarding tuition but allowing claims regarding fees payments to proceed.

1. <u>Tuition Claims</u>

To state a viable breach of contract claim, "plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach."  *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007).  In Rhode Island, forming a valid contract requires "competent parties, subject matter, a legal consideration, mutuality

of agreement, and mutuality of obligation." *DeAngelis v. DeAngelis*, 923 A.2d 1274, 1279 (R.I. 2007) (citing *R.I. Five v. Med. Assocs. of Bristol Cty., Inc.*, 668 A.2d 1250, 1253 (R.I. 1996)).   When alleging a breach, plaintiffs must "describe[e], with substantial certainty, the specific contractual promise the defendant failed to keep." *Brooks*, 480 F.3d at 586 (quotation omitted).

Plaintiffs claim that they contracted, and paid tuition for, on-campus university experiences that included benefits impossible to replicate online.   They contend that this promise appears throughout university publications, including websites, marketing materials, course catalogs, and other resources. *See, e.g.*, ECF No. 22 at 12 (20-295) ("The terms of this contract are as implied or set forth by Defendant through its website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, publications, and course of dealing.").   By moving online, they argue, universities failed to meet their obligation to provide benefits they contracted for, including access to campus facilities, extracurricular programs, and other in-person opportunities for networking and collaborating with peers and professors. *See, e.g.,* ECF No. 22 at 20 (20-191) ("The remote, online learning classes offered to Spring 2020 students since March deprived students of in-person learning from their peers and school faculty.   The move to these remote classes also deprived students of access to the facilities, materials, and opportunities only offered on Brown's physical campus, including laboratory and research experience, use of on campus facilities, such as the gym and libraries, and use of on-campus

9

services and events such as sporting events, end-of-year programs, lectures, and various student services.").

Even with the principle of academic freedom in mind, this Court may review university actions to ensure they comply with enforceable contracts made with students. *See, e.g., Cloud v. Trustees of Bos. Univ.*, 720 F.2d 721, 724-25 (1st Cir. 1983) ("Where, as here, the university specifically provides for a disciplinary hearing before expulsion, we review the procedures followed to ensure that they fall within the range of reasonable expectations of one reading the relevant rules. We also examine the hearing to ensure that it was conducted with basic fairness.") (citations omitted). However, interpreted in the light most favorable to them, Plaintiffs' breach of contract claims regarding tuition must be dismissed. Plaintiffs' complaints fail to identify any contractual terms that obligate the universities to provide in-person, on-campus instruction.

Simply, no plausible reading of the university materials cited by Plaintiffs gives rise to enforceable contractual promises. Plaintiffs point to broad descriptions of the universities' histories, campuses, and common student experiences as the very reasons they chose to matriculate. *See, e.g.*, ECF No. 1 at 3 ("Defendant touts that 'the core of [its] main campus in Kingston is on the National Registrar of Historic Places[']. In terms of campus life, Defendant advertises recreation such as URI Athletics, Club Sports, Intramural Sports, Theatre, Galleries and Music. Defendant advertises that it has 320 buildings on 4 campuses, 25 resident halls and apartments, and that 54% of students are residents of Rhode Island."). In some cases (suing URI,

10

JWU, and RWU), Plaintiffs bolster their points by highlighting the differences between the universities' in-person and online degree programs. *See, e.g.,* ECF No. 21 at 5 (20-226) ("Defendant charged significantly lower tuition for the online degrees than for the same corresponding on-campus degrees. Accordingly, when students pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction . . ..").

Unfortunately for Plaintiffs, these general advertisements and distinctions do not create obligations on the part of the university – they are vague and more akin to puffery, rather than enforceable promises. *G. v. Fay School*, 931 F.3d 1, 12 (1st Cir. 2019); *see also Shin v. Mass. Inst. of Tech.*, No. 020403, 2005 WL 1869101, at *7 (Mass. Super. Ct. June 27, 2005) (distinguishing enforceable contracts from "generalized representations" that are "too vague and indefinite to form [them]."). This is immediately clear for some of the university statements cited by Plaintiffs, which could not conceivably be read as contractual language. *See, e.g.,* ECF No. 22 at 17 (20-295) (quoting URI's website greeting, which states "A small, beautiful place. See for yourself.  At the University of Rhode Island, the ocean is a big part of our history, culture, and everyday life.  Combine our unique location with our welcoming community and you'll find the small, beautiful place we call home.  Explore all we have to offer.").

Plaintiffs also cite university statements that are more specific, such as course catalog promises of "hands-on" instruction in particular campus buildings. *See, e.g.,*

ECF No. 22 at 15 (20-191); ECF No. 16 at 23 (20-246).   Some Defendants raise questions about the context and applicability of these statements.   *See* ECF No. 26 at 12 (20-191) ("Even if a course description were a specific promise . . . a description for a course that no Plaintiff selected is not a promise any of them accepted."; "Each snippet must be read in context.   For example, the complete sentence excerpted by Plaintiffs as to one of the engineering courses states, 'Students will also have the opportunity to gain an introduction to several nano-engineering research tools available on campus.' Ex. A at 168.   Plaintiffs do not allege that students in the course did not 'gain an introduction' to those research tools.").

This Court need not harbor on these questions, because even if the statements could be interpreted as contractual promises, all four universities explicitly reserved the right to unilaterally alter the administration of their academic offerings.   *See, e.g.,* ECF No. 23 at 5 (20-226) ("For example, RWU's academic catalog expressly: 'reserves the right to modify the requirements for admission and graduation, to change the program of study, to amend any regulation affecting the student body, to increase tuition and fees, and to dismiss from Roger Williams University any student at any time, if it is deemed by the University to be in the best interest of the University or the student to do so.' . . . Similarly, with respect to course registration, the catalog explains that RWU 'reserves the right to cancel or limit enrollment in any class and does not guarantee course registrations, assignment of instructors, locations, or meeting times.'").   Indeed, at least for matters such as course locations and logistics, these reservations of rights seem sensible.   *See Cuesnongle v. Ramos,*

713 F.2d 881, 885 (1st Cir. 1983) ("Even to think that a university could be found to have broken its contract when it changed the dates of classes, or the curriculum, for reasons beyond its control, or changed teachers, should startle anyone at all familiar with university life."). In light of them, this Court cannot possibly read an obligation for in-person education, let alone during a global pandemic, into the universities' contracts with students.

The reality of the COVID-19 pandemic contrasts particularly with the complaint against Brown, in which Plaintiffs emphasize the university's "usual and customary practices." The school's "usual and customary practice of providing on-campus courses" – they argue – contribute to their reasonable expectation that Brown would provide them with on-campus educational experiences. ECF No. 22 at 24-25 (20-191). While this Court's central finding is that nothing in the complaint indicates a contractual obligation for Brown to hold in-person programs, the unique nature of this moment warrants emphasis. Brown, and other Defendants were responding to the remarkable circumstances of this pandemic – which has upended countless aspects of our society's usual and customary practices.[9] One can reasonably infer

---

[9] While the universities' decisions to shift to online learning in response to the pandemic were within their rights, their reservations of rights are not absolute. *See, e.g., Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007) ("We interpret such contractual terms in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them. Thus, if the university explicitly promises an appeal process in disciplinary matters, that process must be carried out in line with the student's reasonable expectations.") (citations omitted).

that the universities reserved their rights for situations just like what occurred in 2020 – unexpected events, in this case a global pandemic.

*Breach of Implied Contract Count Against Brown*

Plaintiffs suing Brown also bring a breach of implied contract claim against the university.[10]  ECF No. 22 at 26-27 (20-191).  An implied contract "is a form of express contract wherein the elements of the contract are found in and determined from the relations of, and the communications between the parties, rather than from a single clearly expressed written document."  *Cote v. Aiello*, 148 A.3d 537, 545 (R.I. 2016) (citing *Marshall Contractors, Inc. v. Brown Univ.*, 692 A.2d 665, 669 (R.I. 1997)).  Such contracts "must contain all of the elements of an express contract" and differ "simply [in] the manner by which the parties express their mutual assent."  *Id.* (citations omitted).  Essential elements include "mutual agreement, and intent to promise" – "[i]n determining whether these elements are present, [courts] generally look to the parties' conduct, actions and correspondence."  *Id.* (citations omitted).

For the same reasons articulated previously, this claim fares no better than Plaintiffs' breach of contract count.  As intimated above, nothing in the universities' conduct suggests an intent to promise access to in-person education.  None of the

---

[10] Two other complaints – one against URI and the other against JWU – do not allege breach of implied contract specifically but refer to the terms of the alleged contract for in-person education as "implied or set forth by Defendant" through university publications and materials.  ECF No. 22 at 12 (20-295); ECF No. 21 at 15 (20-226).  To the extent that Plaintiffs sought to claim implied contracts with the two schools, this analysis also applies to their suits.

materials cited by Plaintiffs rise to the level of an implied promise for in-person education – again, at best, the statements amount to puffery and academic programming within university discretion.

In sum, Plaintiffs fail to sufficiently allege plausible breach of contract claims against the universities regarding tuition payments, so the Court GRANTS Defendants' Motions to Dismiss the counts.

### 2. Fees Claims

Plaintiffs also argue that the universities breached their contractual obligations to provide students with on-campus services paid for by fees separate from tuition. The fees paid by students, and refund schemes devised by universities, ranged between the schools. In each suit, Plaintiffs challenge their universities for failing to provide sufficient fees refunds after transitioning online – allegedly breaching their contracts with students.

At this stage of litigation, all the complaints contain sufficient allegations of breaches of contracts for fees paid other than tuition. Regarding tuition, this Court could not find any plausible obligation for universities to provide in-person education in exchange. Rather, the universities provided the services that tuition was paid for – courses with faculty, toward completion of a degree, albeit in a new format. *See, e.g.,* ECF No. 17 at 2 (20-246) ("Plaintiffs do not dispute that they . . . continued with their education, made uninterrupted progress toward their degrees, and received the same academic credit they would have otherwise obtained.").

15

In contrast, Plaintiffs make plausible claims that they reasonably expected certain services – ranging from recreational programs to room and board – in exchange for the fees they paid.[11] Their complaints point to university handbooks and other materials, which describe the purposes and costs of offerings such as health and student activity services. Defendant universities' reservations of rights do not extend far enough to warrant dismissing these claims at this stage – academic discretion does not allow universities to flout contractual obligations.

Discovery will clarify which specific contractual obligations, if any, the universities violated. For now, this Court will allow all the breach of contract claims regarding fees other than tuition to move forward, DENYING Defendants' Motions to Dismiss the counts dealing with fees.

### B. Unjust Enrichment Claims

Plaintiffs brought unjust enrichment claims against the four universities.[12] They argue that Defendants were unjustly enriched by their retention of tuition and fees paid for in-person educational programs at the universities after they went online during the term.[13] Defendants argue for dismissal – claiming that unjust enrichment doctrine is unavailable in their contractual relationships with Plaintiffs,

---

[11] ECF No. 1 at 5 (20-465); ECF No. 22 at 31-33 (20-295); ECF No. 22 at 16 (20-191); ECF No. 16 at 7 (20-246); ECF No. 21 at 32-34 (20-226).

[12] Two of the five complaints – against URI and RWU – separate Plaintiffs into a "tuition class" and a "fees class," whereas the remaining complaints allege one combined class. Because this Court is dismissing the unjust enrichment claims for the same reasons across suits, the analysis will be combined.

[13] ECF No. 1 at 10-11 (20-465); ECF No. 22 at 29-30, 33-34 (20-295); ECF No. 22 at 27-29 (20-191); ECF No. 16 at 25-27 (20-246); ECF No. 21 at 29-31, 34-36 (20-226).

and even if it were, Plaintiffs fail to sufficiently allege the elements of a claim.[14]  For this former reason, Plaintiffs' unjust enrichment claims regarding fees are dismissed – their claims for refunds are moving forward for violating alleged express contracts with the schools.  *Pickett v. Ditech Fin., LLC*, 322 F. Supp. 3d 287, 293 (D.R.I. 2018) ("Where there exists an express contract between the parties, equitable doctrines such as unjust enrichment are unavailable.") (citing *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 162 (1st Cir. 2005)).  This does not defeat Plaintiffs' unjust enrichment claims regarding tuition, as "it is permissible under Rhode Island law to plead an equitable cause of action in the alternative."  *Cappalli v. BJ's Wholesale Club, Inc.*, 904 F. Supp. 2d 184, 197-98 (D.R.I. 2012).

Still, Plaintiffs' tuition claims for unjust enrichment must be dismissed.  In Rhode Island, "[t]o recover for unjust enrichment, a plaintiff must prove (1) that a benefit was conferred upon the defendant by the plaintiff, (2) that the defendant has an appreciation for such benefit, and (3) that the defendant accepted the benefit in such a way that it would be inequitable for the defendant to retain the benefit without paying for it."  *Ciampi v. Zuczek*, 598 F. Supp. 2d 257, 263 (D.R.I. 2009).  "The most significant requirement . . . is that the enrichment to the defendant be unjust."  *Id.* (citing *R & B Elec. Co. v. Amco Const. Co.*, 471 A.2d 1351, 1356 (R.I.1984)).  In no way do Plaintiffs sufficiently allege that the retention of tuition by the universities was unjust – again, the schools provided students with the promised courses and

---

[14] ECF No. 12-1 at 17-19 (20-465); ECF No. 24-1 at 21-24 (20-295); ECF No. 26 at 17-18 (20-191); ECF No. 17 at 29-31 (20-246); ECF No. 23 at 19-22 (20-226).

credits, while constantly adapting in the face of the pandemic no less. Brown's Motion to Dismiss puts it succinctly – noting that Plaintiffs "acknowledge that Brown remained open and that each completed the semester and each earned credits toward their degrees" and "ignore the obvious additional cost Brown had to incur to continue operations during a pandemic." ECF No. 26 at 17 (20-191).

Because Plaintiffs assert contractual claims regarding fees and fail to sufficiently allege that Defendants' retention of tuition payments was unjust, Defendants' Motions to Dismiss Plaintiffs' unjust enrichment claims are GRANTED.

### C. Conversion Claims

Plaintiffs suing Brown and JWU bring additional claims for conversion against the universities. The complaints argue that Plaintiffs had rights to the educational services and activities of in-person education for the term, which the universities wrongfully interfered with and exercised control over – depriving them of the benefits of their tuition and fees payments by transitioning online.[15] Brown and JWU move to dismiss the claims.[16]

"The gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." *Alex & Ani, LLC v. Elite Level Consulting, LLC*, 31 F. Supp. 3d 365, 371 (D.R.I. 2014) (quoting *Fuscellaro v. Indus. Nat'l Corp.*, 368 A.2d 1227, 1230 (1977)). Both complaints lack sufficient allegations of these

---

[15] ECF No. 22 at 29-30 (20-191); ECF No. 16 at 27-28 (20-246).
[16] ECF No. 26 at 18-19 (20-191); ECF No. 17 at 31-34 (20-246).

elements, as Plaintiffs have no plausible claim to possessory rights to an in-person education from the schools. *Montecalvo v. Mandarelli*, 682 A.2d 918, 929 (R.I. 1996) ("[A] conversion action will not lie for a[n] . . . intangible property right that is not manifested by a tangible instrument, such as a written agreement, a bankbook, or a promissory note, that may, in turn, be converted.") Simply, Plaintiffs contracted with universities to exchange tuition for their courses and credit towards a degree, which the universities delivered. The exchange did not give them any possessory rights to specific university facilities or other in-person offerings.

Because Plaintiffs failed to sufficiently state claims for conversion, Brown's and JWU's Motions to Dismiss the counts are GRANTED.

### D. Money Had & Received Claim

Finally, Plaintiffs challenging JWU bring an additional claim of "money had and received" against the university. They argue that the university owes the class "for money had and received" in tuition and fees for the Spring 2020 trimester. ECF No. 16 at 28-29 (20-246). JWU moves to dismiss the claim. ECF No. 17 at 34 (20-246).

"An action for money had and received is maintainable whenever one person has money which in equity and good conscience belongs to another." *Cappalli*, 904 F. Supp. at 198 (citations and quotations omitted). "This claim is essentially one of unjust enrichment." *Id.* at 197. Accordingly, Plaintiffs claim against JWU fails for the same reasons their unjust enrichment claim did. Any legitimate claims to fees will be resolved through Plaintiffs' breach of contract claim. Plaintiffs received the

courses and degree credits they paid tuition for, so any subsequent tuition revenue retained by JWU cannot possibly be considered to still belong to students "in equity and good conscience." Because the money is properly JWU's, the university's motion to dismiss the claim is GRANTED.

### E. JWU Plaintiffs

#### 1. Plaintiff Doris Alexander

One of the named Plaintiffs in the suit against JWU is Doris Alexander, who brings these claims on behalf of her daughter, who was a student at JWU during the Spring 2020 trimester. JWU moves to dismiss Ms. Alexander's claims, arguing that "parents lack standing to assert claims against universities on behalf of their adult children or based on such children's relationships with the schools." ECF No. 17 at 8 (20-246). Plaintiffs counter that, given how often parents pay their child's university tuition, they have standing in lawsuits against universities for tuition refunds. ECF No. 24 at 6 (20-246).

The "irreducible constitutional minimum of standing contains three elements: (1) that the plaintiff suffered an injury in fact, (2) that there is a causal connection between the injury and the conduct complained of, and (3) that it is likely that the injury will be redressed by the requested relief." *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (quotations omitted). JWU is effectively challenging Ms. Alexander's standing on this first ground, arguing that parents are "not entitled to any performance by or benefit from JWU," and thus may not claim injury if the school

fails to deliver. ECF No. 26 at 4-5 (20-246). To demonstrate an injury in fact, "plaintiffs must show that they personally have suffered some actual or threatened injury." *Sutliffe*, 584 F.3d at 326 (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)) (quotations omitted).

Given how common it is for parents to be the source of tuition for schools, they may readily demonstrate personal actual injury from a school's actions. As Plaintiffs argue, "[i]f a parent can be required to pay tuition, it is logical that a parent should be able to sue a university for a failure to provide the services that were promised in exchange for that tuition." ECF No. 24 at 6 (20-246). JWU is correct that there is no actual requirement for parents to pay their child's tuition. ECF No. 26 at 4 n.1 (20-246). However, parents are required by JWU to play a role in determining the school's contractual terms with its students. *See* ECF No. 24 at 6 (20-246) ("[I]n order to qualify for Federal Student Aid at JWU, Federal regulations and University policy require students to report their parents' income . . . which JWU is required to verify.").[17] More practically, due to financial realities, parents often fund their child's contractual obligation to pay tuition, as Ms. Alexander allegedly did here.

---

[17] *See, e.g.,* Linda Borg, *Rhode Island Schools Come up with Fresh Ways to Get Seniors to Apply for Federal Financial Aid*, PROVIDENCE J. (Feb. 27, 2021), https://www.providencejournal.com/story/news/education/2021/02/27/rhode-island-schools-come-up-fresh-ways-get-seniors-apply-federal-financial-aid/4544413001/ ("'The FAFSA is a necessary step from a college enrollment perspective,' said Andrew Bramson, president and CEO of The College Crusade of Rhode Island, a program to improve students' chances of success in college. 'When families complete it, it's a good catalyst for enrollment.'").

Accordingly, in instances where they paid tuition to their child's school, they stand to be injured by subsequent contractual violations.

For the foregoing reasons, this Court finds that Doris Alexander has standing to pursue claims against JWU, and JWU's Motion to Dismiss her claims for lack of standing is DENIED.

### 2. Plaintiff Destiny Washington

Another named Plaintiff in the suit against JWU is Destiny Washington – a citizen and resident of North Carolina who was enrolled at JWU's campus in Charlotte, North Carolina during the Spring 2020 trimester. ECF No. 16 at 4 (20-246). JWU asks the Court to dismiss Ms. Washington's claims, arguing they are barred by North Carolina statute, which grants universities within the state immunity from liability for decisions made in response to the COVID-19 pandemic. ECF No. 17 at 10-13 (20-246). Plaintiffs counter that this law need not apply to JWU, especially not at this early stage of litigation. ECF No. 24 at 7-9 (20-246).

Both parties are partially correct – while the law would ultimately govern Ms. Washington's claims, this Court need not dismiss her from the suit at this stage. North Carolina's "Act To Provide Immunity For Institutions Of Higher Education For Claims Related To COVID-19 Closures For Spring 2020," N.C. Gen. Stat. Ann. § 116-311(a)(1)-(4), immunizes universities located in the state from liability if:

> (1) The claim arises out of or is in connection with tuition or fees paid . . . for the spring academic semester of 2020; (2) The claim alleges losses or damages arising from an act or omission by the institution . . . during or in response to COVID-19; . . . (3) The alleged act or omission . . . was reasonably related to protecting the public health, safety, or welfare in response to the COVID-19 emergency declaration; [and] (4) The

institution of higher education offered remote learning options for enrolled students during the spring academic semester of 2020 that allowed students to complete the semester coursework.

Parties disagree on whether the law applies in this suit – with Plaintiffs unpersuasively urging the Court to exclusively apply Rhode Island law to Ms. Washington's claims. "A federal court sitting in diversity applies the forum state's choice of law rules." *Alifax Holding SpA v. Alcor Sci. Inc.*, 357 F. Supp. 3d 147, 155 (D.R.I. 2019). In Rhode Island, courts have recognized two frameworks governing contract claims: 1) an interest-weighing test and 2) the *lex loci contractus* doctrine. Under the test, courts determining which law governs a contract consider "(a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) where the contract's subject matter is located, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* at 157 (citing Restatement (Second) of Conflict of Laws § 188 (1971)). When "the relevant facts are sufficiently clear that delay in making a choice-of-law determination would serve no useful purpose," courts are "free to make a choice-of-law determination on the basis of the plaintiff's complaint." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 42 (1st Cir. 2020).

Such is the case here – while Plaintiffs are correct that JWU's corporate governance is in Rhode Island, the contract's "subject matter" for this North Carolina resident attending a university in the same state clearly points toward applying the law of that state. This comports with *lex loci contractus* doctrine, which applies the law of the state that the contract "was made with a view to performance in." *Nortek,*

*Inc. v. Molnar*, 36 F. Supp. 2d 63, 66 (D.R.I. 1999) (quoting *Matarese v. Calise*, 305 A.2d 112, 118 n.4 (R.I. 1973)). Clearly, JWU performed services for Ms. Washington in North Carolina.

Still, it would be inappropriate to dismiss Ms. Washington from the suit for now, as the constitutionality of North Carolina's Act is currently being challenged in the Superior Court of North Carolina. ECF No. 24 at 8 (20-246). Until this matter is clarified, she may remain a party to the litigation. JWU's Motion to Dismiss Plaintiff Destiny Washington from the suit is DENIED without prejudice.

## IV.   CONCLUSION

Defendant universities are largely successful in their Motions to Dismiss Plaintiffs' challenges to their decision to transition their programs online for the Spring 2020 term. Because Plaintiffs failed to sufficiently allege breach of contract regarding tuition, but did so regarding fees payments, this Court GRANTS IN PART AND DENIES IN PART Defendants' Motions to Dismiss the breach of contract claims against them. ECF No. 12 (20-465); ECF No. 24 (20-295); ECF No. 26 (20-191); ECF No. 17 (20-246); and ECF No. 23 (20-226). Only breach of contract claims regarding fees payments will be allowed to proceed. All other claims against the universities – unjust enrichment, conversion, and money had and received – fail, and the Court GRANTS Defendants' Motions to Dismiss those counts. Finally, JWU's Motion to Dismiss Plaintiff Doris Alexander and Plaintiff Destiny Washington from the suit against the school is DENIED.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

March 4, 2021